IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 11-cv-02497-MSK-KMT

SARA MOBLEY,

    Plaintiff,

v.

LEGAL HELPERS DEBT RESOLUTION, LLC;
MACEY, ALEMAN, HYSLIP & SEARNS; and
JEFFREY HYSLIP,

    Defendants.

---

**OPINION AND ORDER DENYING MOTION TO DISMISS AND MOTION FOR CHANGE OF VENUE**

---

**THIS MATTER** comes before the Court on the Defendants' Motion to Dismiss (**#7**), to which the Plaintiff Sara Mobley responded **(#9)**, and Defendants replied **(#10)** and the Defendants' Amended Supplemental Motion for Change of Venue Pursuant to 28 U.S.C. § 1404(a) (**#14**), to which Ms. Mobley responded (**#21**), and the Defendants replied (**#22**). Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

## I. Background

The claims in this matter arise out of Ms. Mobley's work with the Defendants Legal Helpers Debt Resolution, LLC ("Legal Helpers") and Macey, Aleman, Hyslip & Searns ("MAHS"), collectively "Legal Helpers."[1] Defendant Jeffrey Hyslip is a partner of both

---

[1] According to Complaint, MAHS is a law firm doing business as Legal Helpers but uses its firm name in states that do not allow trade names. Accordingly, for simplicity, the analysis will refer to Legal Helpers as the relevant entity.

Defendant entities.

Construing the allegations in the light most favorable to Ms. Mobley, the Court finds that the Complaint (**#1-1**) alleges the following facts. The Defendant entities are both Illinois businesses headquartered in Chicago. Legal Helpers has offices around the country, including in Denver, Colorado. Ms. Mobley is a resident of Colorado and worked with the Denver, Colorado office. Mr. Hyslip is a resident of Ohio but has entered appearances as counsel in numerous cases in Colorado.

Legal Helpers is a debt resolution law firm. Ms. Mobley, an attorney, was hired to work on cases involving distressed real estate, specifically loan modifications. She began working in December 2009 and signed a Joint Venture Agreement with Legal Helpers on or around March 31, 2010. Pursuant to the Joint Venture Agreement, she hired as a Class B partner and member of a joint venture with Legal Helpers. She was to be compensated on a per-file basis. Ms. Mobley contends that she has not been compensated for the work she performed and that she did not receive compensation at the level she was promised.

Ms. Mobley further alleges that in August 2010, she traveled to Chicago for a debt settlement conference in connection with her work with Legal Helpers. She alleges that on August 26, 2010, while at a hotel bar with Mr. Hyslip, he made aggressive sexual advances. Later that evening, Mark Mancino, who was also affiliated with Legal Helpers, propositioned Ms. Mobley and then physically assaulted her by grabbing her arm and attempting to drag her to an "employees only" closet. Ms. Mobley reported both of these incidents to Jason Searns, Legal Helpers' general Counsel and Senior Partner. Mr. Searns allegedly dismissed these reports and essentially told Ms. Mobley to handle the issue herself. No action was taken against either Mr. Hyslip or Mr. Mancino.

Ms. Mobley also contends that while she was employed at Legal Helpers, she became aware that a number of persons associated with Legal Helpers had mortgage fraud convictions and ties with organized crime families. She expressed to Mr. Searns her concern that Legal Helpers could be engaged in illegal activity. Mr. Searns again allegedly ignored Ms. Mobley's concerns. Ms. Mobley asserts that the company retaliated against her and created a work environment so hostile that she had no alternative but to take a medical leave of absence. Ms. Mobley resigned on November 2, 2010.

Ms. Mobley's Complaint, originally filed in state court and thereafter removed to this Court, asserts the following claims for relief: (1) hostile work environment and sexual harassment in violation of Title VII against the entity Defendants; (2) retaliation in violation of Title VII against the entity Defendants; (3) wrongful discharge in violation of public policy against the Defendant entities; (4) fraud against the Defendant entities; (5) negligent misrepresentation or omission against the Defendant entities; (6) violation of C.R.S. § 8-4-101 *et seq.*, (the Colorado Wage Act) against the Defendant entities; (7) assault against Defendant Hyslip; (8) battery against Defendant Hyslip; (9) intentional infliction of emotional distress/outrageous conduct against all Defendants; (10) invasion of privacy/intrusion upon seclusion against Defendant Hyslip; (11) false imprisonment against Defendant Hyslip; and (12) intentional interference with contract and/or prospective business advantage against Defendant Hyslip.

Mr. Hyslip moves for dismissal of the claims against him because this Court cannot exercise personal jurisdiction over him. In addition, the Defendant entities seek to transfer this case to the United States District Court for the Northern District of Illinois based on a forum selection clause contained in the Joint Venture Agreement. Finally, all of the Defendants move

to transfer the case to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a) for the convenience of the parties.

## II. Analysis

**A.     Personal Jurisdiction**

The plaintiff has the burden of proving that personal jurisdiction over a defendant exists, although at preliminary stages of the litigation that burden is light. *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056 (10th Cir. 2008). If the court considers a pre-trial motion to dismiss for lack of personal jurisdiction without conducting an evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction to defeat the motion. *Id.* at 1056-57. In making this determination, all factual disputes are construed in favor of the plaintiff. *Id.* at 1057.

For a court to exercise personal jurisdiction over a defendant, there must both a showing that (i) jurisdiction is proper under the laws of the forum state and (ii) the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment. *See Benton v. Cameco Corp.*, 375 F.3d 1070, 1075 (10th Cir. 2004). Colorado's long arm statute[2] is coextensive with the constitutional limitations imposed by the due process clause; therefore, the inquiry collapses into a single inquiry: whether jurisdiction is consistent with the due process clause. *See id.* This involves a two-step inquiry: (1) whether the nonresident defendant has "minimum contacts" with the forum state such "that he should reasonably anticipate being haled into court there"; and (2) if minimum contacts are found, whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *AST Sports Science*, 514 F.3d at

---

[2]Under the statute, personal jurisdiction over a nonresident defendant may arise from, *inter alia*, (1) the transaction of any business within the state or (2) the commission of a tortious act within the state. C.R.S. §13-1-124(1).

1057 (citations omitted).

### 1. Minimum Contacts

The due process clause requires that the nonresident defendant have "minimum contacts" with the forum state. *See OMI Holdings, Inc.*, 149 F.3d at 1091 (quoting *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). The "minimum contacts" standard may be met by showing either general or specific jurisdiction over the defendant. *See OMI Holdings*, 149 F.3d at 1090-91. First, a court may exercise general jurisdiction over a defendant for any claim, whether arising from activities in the state or not, if the defendant has sufficiently strong business contacts with the forum state. *Id*. at 1091.

Alternatively, a court may exercise specific jurisdiction over a defendant if the defendant's actions in or directed at the forum give rise to the litigation. Specific jurisdiction may be asserted over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *OMI Holdings*, 149 F.3d at 1090-91 (citations omitted).

### 2. Fair Play and Substantial Justice

In addition to examining a defendant's minimum contacts with the forum state, a court must also analyze whether the exercise of personal jurisdiction offends "traditional notions of fair play and substantial justice." *ClearOne Communications, Inc. v. Bowers*, 643 F.3d 735, 764 (10th Cir. 2011). This inquiry requires a determination of whether personal jurisdiction over a defendant with minimum contacts is reasonable in light of the circumstances surrounding the case. In assessing reasonableness, a court considers: (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient

resolution of controversies, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Id*.

### 3. Mr. Hyslip's Contacts with Colorado

Ms. Mobley alleges that the Court has jurisdiction over Mr. Hyslip because of his "continuous and systematic general business contacts" with Colorado. As grounds, Ms. Mobley argues that Mr. Hyslip has filed thirty-nine lawsuits in the United States District Court for the District of Colorado between 2007 and 2011 on behalf of clients of Legal Helpers. Ms. Mobley asserts that this conduct amounts to substantial continuous contacts with Colorado and purposeful availment of the privilege of doing business in the state. *Keefe v. Kirschenbaum & Kirschenbaum, P.C.,* 40 P.3d 1267, 1271 (Colo. 2002). According to the Plaintiff, because Mr. Hyslip himself has created a substantial connection with Colorado, he could reasonably anticipate being haled into court in the state.

In response, Mr. Hyslip argues that the Colorado long-arm statute requires that the cause of action must still "arise out of" the transaction of business within the state. C.R.S. § 13-1-124. Notwithstanding this language, however, the "General Assembly made clear its intent 'to extend the personal jurisdiction of Colorado's courts to their maximum limits permissible under the United States and Colorado Constitutions.'" *Kirschenbaum*, 40 P.3d at 1270 (quoting *Scheuer v. District Court, In and For City and County of Denver*, 684 P.2d 249, 250 (Colo. 1984)). This includes the exercise of general personal jurisdiction; *i.e.*, "where there are substantial continuous contacts with the forum state, jurisdiction may be found even when the cause of action does not arise out of the forum related activity." *Waterval v. District Court In and For El Paso County*, 620 P.2d 5, 9 (Colo. 1980) (quoting *Tucker v. Vista Financial Corp*., 192 Colo. 440, 443, 560 P.2d 453, 456 (1977)). Nonetheless, '"because general jurisdiction is not related

to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts.'" *Archangel Diamond Corp. v. Lukoil*, 1194 (Colo. 2005). The touchstone of the inquiry is whether the defendant himself acted to create the contacts with the state; therefore, purposeful availment must be shown to ensure that a defendant "will not be haled into a jurisdiction solely as a result of random or fortuitous contacts or the unilateral activity of a third party." *Kirschenbaum*, 40 P.3d at 1270-71.

In addition to his multiple appearances as an attorney in the courts of this state, Mr. Hyslip is allegedly a partner in, and therefore an owner of, a business that is registered and operates in Colorado. The operation of such a business and Mr. Hyslip's activities in Colorado amount to sufficiently continuous and systematic contacts to confer general jurisdiction. In addition, there is a nexus between the business activities of Mr. Hyslip and Ms. Mobley's cause of action. Ms. Mobley's contact with Mr. Hyslip arose out of her work with Legal Helpers and occurred in connection with her duties for the company. Mr. Hyslip could reasonably foresee that if he committed a tort against an employee of a business that he operates in Colorado, even if the tort occurred in another state, that he could be sued in Colorado. Mr. Hyslip's connection to the state is the result of his purposeful actions, not of fortuitous events or unilateral activity of Ms. Mobley or another party. This is sufficient to satisfy Ms. Mobley's *prima facie* burden to demonstrate personal jurisdiction over Mr. Hyslip.

Although neither party addressed the second prong of the personal jurisdiction analysis, whether the exercise of jurisdiction would be reasonable, the Court concludes that none of the factors in the analysis weigh against the exercise of jurisdiction here. The burden on Mr. Hyslip is no greater than it would be if the case were heard in Illinois, the Defendants' preferred

alternative forum. Colorado has an interest in resolving a dispute involving one of its residents, particularly since other aspects of the case concern a business that operates in Colorado. Ms. Mobley has a significant interest in resolving all of her claims in a single forum. Given these considerations, the Court concludes that the exercise of jurisdiction over Mr. Hyslip is reasonable.

### 2. Forum Selection Clause

Alternatively, the Defendants argue that the case must be dismissed because of a forum selection clause contained in the Joint Venture Agreement. The Joint Venture Agreement, which binds Ms. Mobley and Legal Helpers, contains the following provision (the "Forum Selection Clause"):

> **Choice of Law and Forum Selection**. The laws of the State of Illinois shall govern the validity of this Agreement, the construction of its terms and the interpretation of the rights and duties of the parties hereto. To the extent that any court action is permitted consistent with or to enforce Section 7 of this Agreement [concerning confidentiality and non-compete obligations], the parties hereby consent to the jurisdiction of the State of Illinois and the United States District Court for the District of Illinois. Accordingly, with respect to any such court action, [Ms. Mobley] (a) submits to the personal jurisdiction of such courts; (b) consents to service of process by delivery in accordance with the notice provisions of section 27 or any other means allowed by Illinois law and procedure; and (c) waives any other requirement (whether imposed by statute, rule of court, or otherwise) with respect to personal jurisdiction or service of process.

Joint Venture Agreement, Exh. 1 to Defs' Mot. To Dismiss,**# 7-1**, ¶ 12. The Defendants argue that pursuant to this provision, venue is only proper in Illinois and, therefore, the case must be dismissed.[3]

---

[3]Alternatively, the Defendants contend that venue is not proper in Colorado under Title VII's venue provision, 42 U.S.C. § 2000e-5(f)(3). Under this provision, an action may be brought in "the judicial district in which the aggrieved person would have worked but for the

The parties have not provided a choice of law analysis regarding what law governs the interpretation of the Joint Venture Agreement.[4] However, given that the Agreement itself requires application of Illinois state law, the Court will analyze the effect of the venue provision under Illinois law. Under Illinois law, if the language of an agreement is facially unambiguous, a trial court may interpret the contract as a matter of law without the use of extrinsic evidence. *Air Safety, Inc. v. Teachers Realty Corp.*, 185 Ill.2d 457, 462, 706 N.E.2d 882 (1999). The Court finds that the clause is unambiguous and therefore interprets it as a matter of law.

Illinois courts recognize the distinction between contract clauses that effect a consent to the jurisdiction of a particular court and those that intend to make a court the exclusive forum for a dispute. *Calanca v. D & S Mfg. Co.*, 157 Ill.App.3d 85, 87, 510 N.E.2d 21, 22-23 (1st Dist. 1987) (noting that the words "shall" and "must" in a forum selection clause mean that the stated forum is exclusive). The Forum Selection Clause here expressly states that the parties "hereby consent to the jurisdiction" of the Illinois courts; by contrast, it contains no mandatory language with respect to forum. The obligations contained in the clause amount to a waiver of objections to jurisdiction and service of process, which is consistent with a consent to jurisdiction. However, despite the heading containing the words "Forum Selection," the clause imposes no restrictions or obligations regarding where a case may be heard. Therefore, the Court concludes that the clause is permissive, not mandatory, and does not require dismissal of the case.

### 3.      Transfer for Parties' Convenience

---

alleged unlawful employment practice." Ms. Mobley has alleged that she worked and would have continued working for Legal Helpers in Colorado but for the discriminatory adverse actions against her. The Court is satisfied that venue is proper in Colorado.

[4]In their reply brief, the Defendants contend that Illinois law should apply pursuant to the Forum Selection Clause.

Finally, the Defendants seek to transfer the case to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a). Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party moving to transfer a case pursuant to section 1404(a) bears the burden of establishing that the existing forum is inconvenient. *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1515 (10th Cir. 1991) (citations omitted). Motions to transfer pursuant to this provision should be determined according to an "individualized, case-by-case consideration of convenience and fairness." *Id*. at 1516 (citations omitted). Among the factors a district court should consider are the following:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.

*Id*. (citing *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir.1967)). An action may be transferred under section 1404(a) at any time. *Id.* "[U]nless the balance is strongly in favor of the movant the plaintiff's choice of forum should rarely be disturbed." *Scheidt v. Klein*, 956 F.2d 963, 965 (10th Cir. 1992).

The parties do not dispute that the case could have been brought in the Northern District of Illinois and so the analysis concerns only whether transfer is appropriate in the interest of justice and for the convenience of the parties.

Applying the factors identified in *Chrysler Credit*, the Court notes first that significant

deference should be given to Ms. Mobley's interest in keeping the case in Colorado, as she is a resident of the state and elected this forum. Her choice should not be lightly set aside.

The second factor concerns the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses. As to this factor, the parties' initial disclosures show that several employees and principals of Legal Helpers are named as potential witnesses. Although they are not residents of the Colorado, the Defendants do not argue that they would be unavailable as witnesses in Colorado, only that it would be more convenient for them if the case were heard in Illinois. Several other witnesses associated with the Defendants live in California, Ohio, or New Jersey and so an action in Illinois presents no more convenience than one in Colorado; again, there is no contention that these witnesses would not be available in Colorado. Several potential witnesses are Colorado residents, including Ms. Mobley's medical care providers. Some witnesses are unknown[5]. As to these, the Defendants argue that the Illinois court is preferable because it would have compulsory process to resolve any non-party discovery or witness issues.

Although the Defendants contend that the relevant records are located in Illinois, they have not shown any difficulty in producing such records for litigation in Colorado. Given the mixed showing as to whether evidence and witnesses would be more accessible in Illinois than Colorado, this factor does not weigh in favor of transferring the case.

The next factor is the cost of making the necessary proof, which neither party has addressed. Given that the Defendants operate in a business and have an office in Colorado, there does not appear to be a significant additional cost or burden to having them litigate in this forum.

---

[5] Ms. Mobley has apparently asserted that one or more hotel workers may have witnessed the events occurring in the hotel.

On the other hand, requiring the plaintiff to litigate in Illinois could increase her costs. This factor, therefore, weighs in favor of retaining the case in this forum. Similarly, neither party has raised any issues regarding the fourth factor, the enforceability of a judgment if one is obtained. It appears that a judgment would be enforceable against the Defendants whether obtained in Colorado or Illinois and so this does not justify transferring the case. No showing has been made as to the relative advantages and obstacles to a fair trial or any difficulties that may arise from congested dockets.

The next two factors, specifically the possibility of the existence of questions arising in the area of conflict of laws and the advantage of having a local court determine questions of local law, weigh somewhat in favor of transfer. Although Ms. Mobley asserts claims under Title VII, which do not implicate local law or conflict of laws, her state law claims could require a conflict of laws analysis and, to the extent they implicate the Joint Venture Agreement, application of Illinois law.

The Defendants argue that the events underlying Ms. Mobley's claims all occurred in Chicago, Illinois and that the Forum Selection Clause strongly indicates that Illinois is the parties' preferred venue. While it is true that some of the events occurred in Chicago, several of Ms. Mobley's claims are based on email communications with Mr. Searns and her compensation as to which location is not a significant evidentiary concern.

Based on this record, the Court finds that the Defendants have not shown that the plaintiff's choice of forum here is so inconvenient that it should be set aside in favor the alternative proposed by the Defendants. Therefore, the motion to transfer is denied.

**IT IS THEREFORE ORDERED**

1. The Defendants' Motion to Dismiss (#**7**) and the Defendants' Amended

        Supplemental Motion for Change of Venue Pursuant to 28 U.S.C. § 1404(a) (**#14**) are **DENIED**.

2.    Because the Defendants will continue to litigate in this Court, their counsel are directed to familiarize themselves with this Court's local rules, including D.C.COLO.LCivR 10.1 and Appendix E, regarding the appropriate caption format.

Dated this 13th day of January, 2012

        **BY THE COURT:**

        *[signature: Marcia S. Krieger]*

        Marcia S. Krieger
        United States District Judge